UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-00246-FDW-SCR

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN A. SUMICHRAST, )<br>)<br>Defendant. )<br>) | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 39), and the parties' Joint Motion for Peremptory Trial Setting, (Doc. No. 49 ). This matter has been fully briefed, (Doc. Nos. 40, 44, 45,47, 48), and is ripe for ruling. For the reasons set forth below, the Motion for Summary Judgment is DENIED, and the Motion for Peremptory Setting is DENIED.

Defendant Securities and Exchange Commission ("SEC") moves for partial summary judgment on its claims[1] that Defendant Martin Sumichrast ("Sumichrast") engaged in several self-dealing transactions while serving as an investment adviser to Stone Street Partners, LLC (f/k/a/ Siskey Capital, LLC) without first notifying or getting consent from the Stone Street investors in violation of Sections 206(2) and (3) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(2), (3). The standard to review the instant motion is well settled:

---

[1] The SEC's complaint asserts additional claims for fraud in violation of Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1); fraud in violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3); fraud in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5; fraud by an investment adviser in violation of Sections 206(1) of the Advisers Act, 15 U.S.C. §§ 80b-6(1); fraud by an investment adviser in violation of Section 206(4) the Advisers Act, 15 U.S.C. § 80b-6(4); and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8. Neither Plaintiff nor Defendant have moved for summary judgment on those claims, and therefore, they shall proceed to trial by a jury.

1

> Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.
>
> A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006)).

SEC v. Peters, No. 5:17-CV-630-D, 2021 WL 1112387, at *3 (E.D.N.C. Mar. 22, 2021); see also United States ex rel. Gugenheim v. Meridian Senior Living, LLC, 36 F.4th 173, 178 (4th Cir. 2022).

Defendant moves for partial summary judgment on parts of counts four and five of the complaint, which allege Defendant violated sections 206(2) and (3) of the Advisers Act. Section 206 provides, in relevant part:

> It shall be unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
> . . .
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;

(3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph shall not apply to any transaction with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction;

. . . .

15 U.S.C. § 80b-6. A threshold issue to determine a violation of Section 206 of the Advisers Act is whether the actor is an "investment adviser," which the Advisers Act defines as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings . . . as to the advisability of investing in, purchasing, or selling securities . . . ." 15 U.S.C. § 80b-2(a)(11). "A person who owns and manages the funds of an investment adviser company and is compensated by the investment adviser company by a salary or a percentage of net profits or capital gains also is considered an investment adviser for the purposes of Section 206." Peters, No. 5:17-CV-630-D, 2021 WL 1112387, at *6 (citing United States v. Miller, 833 F.3d 274, 282 (3d Cir. 2016); United States v. Onsa, 523 F. App'x 63, 64–65 (2d Cir. 2013) (unpublished); Goldstein v. S.E.C., 451 F.3d 873, 876 (D.C. Cir. 2006); United States v. Elliott, 62 F.3d 1304, 1310–11 (11th Cir. 1995), opinion amended by 82 F.3d 989 (11th Cir. 1996); Abrahamson v. Fleschner, 568 F.2d 862, 870–71 (2d Cir. 1977)). "This is a broad definition." SEC v. Ahmed, 308 F. Supp. 3d 628, 652 (D. Conn. 2018) (quoting Financial Planning Ass'n v. SEC, 482 F.3d 481, 484 (D.C. Cir. 2007)).

Here, the parties present significant argument—and evidence—on the issue of whether Defendant qualifies as an "investment adviser" under the Advisers Act. One on side, the SEC contends Defendant meets the definition of an investment adviser with respect to his management of Stone Street because he: (i) engaged in the business of advising Stone Street, (ii) about securities

3

(purchasing, selling, and managing investments in securities for Stone Street), (iii) for compensation. Defendant, however, contends that because Stone Street was not an investment adviser company (it did not provide investment *advice* to clients or potential clients or receive compensation, whether salary or a percent of profits, for providing investment *advice* to its members), then he—as the owner and manager of the company—was also not an investment adviser. Defendant directs the Court to evidence that Stone Street generated revenue from its business advisory services (as opposed to investment profits), as well as the facts that Stone Street members did not make and were not *advised* on investment decisions after the purchase of their membership interests in 2014 and 2015 and had no right to withdraw or transfer their units. Defendant also points to disputes over the characterization of his compensation, including his salary and management fees, which he contends were not for "*advising* others . . . as to the *advisability* of investing in, purchasing, or selling securities" under the Advisers Act.

While Defendant does not dispute facts that Stone Street purchased securities as part of his management of Stone Street, the Court finds unpersuasive for summary judgment the SEC's citation to cases that have concluded—under very different facts—that engaging in a variety of securities transactions qualifies as "advice" within the meaning of Section 202(a)(11) of the Advisers Act.  For example, in, Sec. & Exch. Comm'n v. Peters, No. 5:17-CV-630-D, 2021 WL 1112387, at *1 (E.D.N.C. Mar. 22, 2021), the court concluded the defendant was an "investment adviser" "where he held Series 7, 63, and 65 licenses" and formed and worked for companies that were registered with the Secretary of States as "investment adviser."  None of those facts are present here.  Similarly, in Abrahamson v. Fleschner, the court discussed the legislative history of the Adviser Act and concluded "as for legislative intent, we believe that the SEC Report, together with the House and Senate Reports, make it clear that Congress intended to reach persons who

4

receive compensation for investing funds of their clients." 568 F.2d 862, 870 (2d Cir. 1977), abrogated on other grounds by Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11 (1979). The undisputed facts of Abrahamson case indicated the general partners of the company formed with the *"intention* of [an] investment partnership . . with a conservative *investment* policy,"* which led to the court's holding that its general partners were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act. 568 F.2d at 866 (emphasis added). The Second Circuit's reasoning in Abrahamson has not been adopted by the Fourth Circuit, although it is persuasive and—if applied—could be dispositive if the facts here were undisputed; but they are not. Similarly, the Court also finds the other cases cited by the SEC distinguishable on their facts at this stage and given this Court's summary judgment standard of review. S.E.C. v. Saltzman, 127 F. Supp. 2d 660, 662 (E.D. Pa. 2000) (the defendant was "both the managing general partner and a limited partner of Saltzman Partners L.P., a private *investment partnership* . . . [and] maintained exclusive control of the partnership's investment portfolio, bank account, and *brokerage accounts*" (emphasis added)); S.E.C. v. Kenton Cap., Ltd., 69 F. Supp. 2d 1, 5 (D.D.C. 1998) (the defendant entity was incorporated in the Cayman Islands, British West Indies, and its president had "worked for many years as a registered securities professional" and searched "for *trading programs* and investors" on behalf of the defendant entity (emphasis added)).

Considering the record as a whole and construing the evidence in the light most favorable to Defendant as the nonmoving party, issues of disputed fact exist as to whether Stone Street was formed as or operated as an "investment partnership" and whether Defendant is an "investment adviser." In other words, based on the parties' arguments, evidence, and somewhat limited case law authoritatively addressing this narrow and disputed issue, the Court cannot conclude as this stage that the SEC is entitled to summary judgment on the "investment adviser" issue, which also

precludes summary judgment the SEC's claims under Section 206(2) and (3). The Court notes this ruling is without prejudice to Plaintiff's ability to move for judgment as a matter of law on this issue at the close of its case-in-chief and without prejudice to any party to reassert the application of any argument or legal authority raised in the instant briefing to the evidence as it is presented at trial.

The Court thus turns to the setting of trial in this matter. The parties jointly request a peremptory setting of November 13, 2023, in this case. The Court's current calendar and trial docket, including criminal cases scheduled for trial during the same term that must take priority under the Speedy Trial Act, does not support such a peremptory setting. Instead, the Court will continue the trial setting in this case to its January 8, 2024, term, with jury selection to begin on January 9, 2024, and trial to begin as soon as practical thereafter. In lieu of a peremptory setting, the Court intends for this case to be the first *civil case* to proceed to trial during the term. Any criminal cases also set will take priority, the Court will inform counsel and the parties for this case of a more definite date for trial during docket call at 9:00 a.m. on January 8, 2024. A pretrial conference will immediately follow docket call on January 8, 2024, in Courtroom #5B of the Charles R. Jonas Building, 401 W. Trade Street, Charlotte, N.C., 28202. The parties' jointly-prepared pretrial submissions required under this Case Management Order shall be due December 20, 2023.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. No. 39), is DENIED.

**IT IS FURTHER ORDERED** that the Joint Motion for Peremptory Setting, (Doc. No. 49), is DENIED. This case shall be continued to the Court's January 8, 2024, docket, and it shall be calendared for jury selection on January 9, 2024, with trial to begin immediately after the

conclusion of any criminal trials, or immediately after jury selection if no criminal cases proceed to trial during this term.

**IT IS FURTHER ORDERED** that the Court will conduct a pretrial conference immediately following docket call on January 8, 2024, and the parties' jointly-prepared pretrial submissions shall be due by December 20, 2023.

**IT IS SO ORDERED.**

Signed: October 12, 2023

Frank D. Whitney
United States District Judge